UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,                Case No: 19-20216

       Plaintiff,                Hon. Victoria L. Roberts

V

CURTIS WOOD,

       Defendant.

## United States' Response in Opposition to Motion for Bond

Defendant Curtis Wood operated a large scale drug trafficking organization. He has a significant criminal record, including serving a life sentence for drug trafficking. Wood engaged in narcotics dealing while he was incarcerated in the Michigan Department of Corrections and was on parole when he committed the current offenses. Wood has not rebutted the presumption that he is a danger to the community or a risk of flight. Moreover, the statutory factors in the Bail Reform Act weigh heavily in favor of Wood's continued detention. For these reasons, and those stated in the government's brief, the motion should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/Laura L. Moody*
Assistant U.S. Attorney

i

Dated: March 27, 2020

211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0206
Laura.moody@usdoj.gov

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,          Case No: 19-20216

       Plaintiff,                Hon. Victoria L. Roberts

V

CURTIS WOOD,

       Defendant.

## __United States' Brief in Opposition__
## __to Motion for Bond__

# Table of Contents.

TABLE OF AUTHORITIES ........................................................................ iv

ISSUES ........................................................................................................ v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................ vi

BACKGROUND ........................................................................................ 1

ARGUMENT .............................................................................................. 2

   I.   The Bail Reform Act presumes detention and Wood has not
       rebutted that presumption. ........................................................ 2

   II.  The statutory factors in the Bail Reform Act weigh in favor of
       detention ...................................................................................... 3

      A.   Nature and circumstances of the offense charged and
           weight of the evidence for detention ................................... 4

      B.   History and Characteristics of the Person ......................... 5

      C.   Nature and Seriousness of the Danger to the
           Community ........................................................................... 8

   III.  The COVID-19 Outbreak Does Not Establish Grounds for
       Release Under Section 3142(i) ................................................... 9

   IV   The United States Requests a Hearing and Stay of any
       Order ......................................................................................... 14

CONCLUSION ......................................................................................... 14

# Table of Authorities

## Cases

United States v. Stone, 608 F.3d 939 (6th Cir. 2010) ........................... 2

United States v. Dominguez, 783 F.2d 702 *7th Cir. 1986) ................. 2

United States v. Mercedes, F.3d 433 (2d Cir. 2001).............................. 6

United States v. Orena, 986 F.2d 628 (2d Cir. 1993) ........................... 6

United States v. Gotti 776 F.Supp. 666, 672 (E.D. New York 1991) .... 8

United States v. Jeffries, No. 10-cr-100, 2011 WL 182867 at *4 (E.D. Tenn. Jan. 20, 2011) ................................................................................ 9

United States v. Wages, 271 Fed. App'x 726, 728 (10th Cir. 2008) ...... 12

United States v. Rodriguez, 50 F. Supp. 2d 717, 722
(N.D. Ohio 1999) ................................................................................. 13

United States v. Martin, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020)............................................................................ 13

## Statutes

18 U.S.C. § 3142 et. seq. ......................................................................... 2

# Issues

I.     Curtis Wood operated a large scale drug trafficking organization. He has a significant criminal record, was on parole when he committed the current offenses, and is facing a significant mandatory minimum. Wood has not rebutted the presumption that he is a danger to the community or a risk of flight. Should he be granted bond?


II.    The statutory factors in the Bail Reform Act consider the nature and circumstances of the offense, the weight of the evidence, the history of the defendant, and the danger to the community. Curtis Wood is a large scale drug trafficker, has failed to comply with the law even under the most restrictive supervision, and poses a danger to community. Thus, the statutory factors weigh in favor of detention. Should Wood be granted bond?


III.    18 U.S.C. § 3142(i) allows a judicial officer to release a defendant if there is a compelling reason for the release. Here, there is no indication that Wood is in danger. And any speculative concerns should not outweigh the careful balance of factors that weigh in favor of Wood's continued detention. Should he be granted bond?

## Controlling or Most Appropriate Authority

*United States* v. *Stone*, 608 F.3d 939 (6th Cir. 2010)

*United States* v. *Dominguez*, 783 F.2d 702 *7th Cir. 1986)

*United States v. Mercedes,* F.3d 433 (2d Cir. 2001)

*United States v. Orena,* 986 F.2d 628 (2d Cir. 1993)

18 U.S.C. § 3142 et. seq.

# Background

Curtis Wood is a multi-kilogram cocaine supplier and ran a large scale drug operation. From approximately March 2016, through August 2017, Wood along with co-defendants Kevin Wood, Gregory Barnes, Patrick Harris-Walker, Jerome Bray, and Deviunda Morris, operated in the Detroit area.During the same time frame, Wood conspired with others to possess firearms in furtherance of his drug trafficking crimes.

Wood was charged in a superseding indictment with conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846, 841, conspiracy to possess firearms in furtherance of drug trafficking, in violation of Title 18, United States Code, Section 924(c), and attempted possession of a controlled substance with intent to distribute, Title 21, United States Code, Sections 846, 841.

Wood made his initial appearance on the indictment and consented to detention on July 12, 2019. He has now moved for an order granting bond.

**Argument**

## I.   The Bail Reform Act presumes detention and Wood has not rebutted that presumption.

The Bail Reform Act, 18 U.S.C. § 3142, ordinarily requires that a defendant be released pending trial unless there are no conditions that will reasonably assure the appearance of the person at future court proceedings and the safety of the community. 18 U.S.C. § 3142(e). But this default of release is reversed, and detention is presumed, for certain particularly dangerous defendants. 18 U.S.C. § 3142(e)(3); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). If a defendant is charged with a crime of violence or a drug trafficking offense, it is presumed by the statute that no condition or combination of conditions will assure the appearance of the defendant or the safety of the community. 18 U.S.C. § 3142(e)(3). This presumption imposes a burden of production on the defendant to offer at least some evidence that he does not pose a danger to the community or risk of flight. *Stone*, 608 F.3d at 945. And even if the defendant satisfies this burden, the district court must still give some weight to the presumption because it reflects Congress's judgment that "particular classes of offenders should ordinarily be detained prior to trial." *Id.*; *United States v. Dominguez*,

2

783 F.2d 702, 707 (7th Cir. 1986) ("[T]he presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions.").

Wood has not rebutted the presumption that he is a danger to the community or a risk of nonappearance if he is released. In fact, Wood has not even acknowledged that a presumption exists nor has he offered any evidence that would lead this court to believe that he is not a danger or a flight risk. In addition, Wood's motion fails to address in any meaningful way his involvement in this case and his criminal history. As a result, Wood's argument is insufficient to show why his particular situation should fall outside "the congressional paradigm" that people charged with this very dangerous offense should be detained. *Stone*, 608 F.3d at 946. Consequently, Wood should continue to be detained.

## II.   The statutory factors in the Bail Reform Act weigh in favor of detention.

In determining whether detention is warranted, the Court must consider, in addition to the presumption in favor of detention, (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). Each of these factors weigh in favor of Wood's continued detention.

## A. Nature and circumstances of the offense charged and weight of the evidence for detention.

The nature and circumstances of the offenses are undeniably serious. Indeed, Congress believes them to be serious enough to attach a steep mandatory minimum. Here, Wood and the other co-conspirators were engaged in a multi-million dollar cocaine trafficking operation. Their criminal activity included possession of firearms, using multiple homes to conduct their business, and moving kilograms of cocaine in the Detroit area community. The weight of the evidence of Wood's dangerousness is strong and establishes that release is inappropriate.

"Section 3142(g)(2) considers weight of the evidence of dangerousness, not the weight of the evidence of defendant's guilt."

4

*Stone*, 608 F.3d at 948. The Sixth Circuit "routinely affirms, on dangerousness grounds, the pretrial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence…To be sure, drug trafficking is a serious offense that, in itself is a danger to the community." *Id.* at 955.  Wood however is not a run-of-the-mill drug dealer and this is not a run-of-the-mill operation. Moreover, he has a significant criminal past involving narcotics. He was sentenced to life imprisonment in the Michigan Department of Corrections for manufacturing and delivery of narcotics. But he was undeterred. Wood was barely on parole when he began to engage in narcotics and firearms activity again. Clearly, the weight of the evidence establishes that Wood is a danger to the community.

### B.   History and Characteristics of the Person

1. Wood's disregard for the law

Wood, who is 49 years old, ran a large drug trafficking organization. He is an extremely experienced drug trafficker. He has a criminal history dating back to 1986, including an assault and battery, malicious destruction of property, and prior narcotics offenses. In 1998, Wood was sentenced to life imprisonment for the manufacturing and delivery of

narcotics. He was paroled on February 2, 2016. Information indicates that he was dealing drugs while incarcerated in the Michigan Department of Corrections. And he was on parole at the time he was running the current drug trafficking organization. This certainly demonstrates that there are no set of conditions that will reasonably assure the safety of the community. Not even the most restrictive conditions imposed by prison and parole prevented Wood from engaging in narcotics activity.

2. Wood's ties to the community

Wood notes that he has "support and letters from a host of community members."  But a showing of strong ties to the community alone does not rebut the concern that a defendant, if released, will be a danger to the community. Nor can conditions such as electronic surveillance and home tether guarantee the safety of the community. *United States v. Mercedes*, 254 F.3d 433, 436–37 (2d Cir. 2001); *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (conditions that a defendant not have contact with co-defendants, not commit another crime, and check in with pretrial services do not control or diminish the danger to the public for a violent offender, and the addition of

6

conditions like home arrest and electronic surveillance do not alleviate this danger).

### 3. Wood's third party custodian

Wood proposes residing with his daughter, Ivana Morris. But his daughter can hardly be tasked with doing something that the Michigan Department of Corrections could not do, that is, keep Wood from engaging in narcotics offenses. Further, Ivana Morris' mother is Deviunda Morris, who stands indicted as a co-conspirator with Wood. Wood's brother, Kevin Wood, also stands indicted as a co-conspirator. Placing Wood with a family member does not assure the safety of the community.

### 4. Wood's parole detainer

As noted above, Wood was sentenced to life imprisonment in the Michigan Department of Corrections. He was granted parole on February 2, 2016, and was on parole when he committed the instant offenses. Accordingly, there is an active parole detainer as of July 12, 2019.  And because there is a parole detainer Wood, if granted bond, will only be released into MDOC custody.

## C. Nature and Seriousness of the Danger to the Community

Wood conspired to distribute multi-kilograms of cocaine. And he possessed firearms in furtherance of his drug trafficking. The Sixth Circuit has repeatedly supported the proposition that drug trafficking, even without the presence of firearms or engagement in violence, is dangerous. *See United States v. Stone,* 608 F.3d 939 (6th Cir. 2010). *See also, e.g., United States v. Hinton,* 113 Fed.Appx. 76 (6th Cir. 2003)(conspiracy to distribute and possess over five kilograms of cocaine); *United States v. Hare,* 873 F.2d 796, 798 (5th Cir. 1989)(stating that "[t]he risk of continued narcotics trafficking on bail constitutes a risk to the community."); *see also United States v. Leon,* 766 F.2d 77, 81 (2d Cir. 1985)("[I]t is clear that the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'".)

Wood's extensive history of drug trafficking and failure to comply with the law, even while imprisoned and on parole, demonstrate that no conditions of release—whether they be electronic monitoring, home confinement, or a third-party custodian—will replicate the confidence of security a detention facility instills to ensure Wood does not sell drugs again. *United States v. Gotti* 776 F.Supp. 666, 672 (E.D. New York 1991).

## III.   The COVID-19 Outbreak Does Not Establish Grounds for Release Under Section 3142(i)

Although Wood does not raise the COVD-19 issue, the government will address it given the significance of the issue.  Section 3142(i) provides that a judicial officer may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason." (R. 27, 8). Section 3142(i) both requires a "compelling reason" for release, and imposes a standard that such release must be "necessary." *Id.* The burden of establishing necessity under section 3142(i) rests with the defendant. *See United States v. Jeffries*, No. 10-cr-100, 2011 WL 182867 at *4 (E.D. Tenn. Jan. 20, 2011); *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).  Release under § 3142(i) is intended for "extraordinary circumstances," which are exceedingly rare.  *United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009).

The potential spread of COVID-19 is a serious concern for all communities.  But Wood has not alleged, nor is there any indication, that there is a compelling reason for his release. Wood has not alleged

that he is any specific danger of contracting COVID-19 while housed at

Milan. And there are currently no known cases of COVID-19 at the

Milan Detention Center (inmate or staff), or at any other facility where

the U.S. Marshals house prisoners in this district.  Moreover, officials at

Milan have instituted a number of precautionary measures to reduce

the risk of infection. These include the following:[1]

- *Detainees Entering the Facility and Current Detainees*. The BOP manages an infectious disease management program as a matter of course, but in order to address the specific COVID-19 pandemic, BOP facilities, including Milan, have instituted additional measures, including: (i) all newly-arriving detainees and BOP inmates are screened for COVID-19 exposure risk factors and symptoms; (ii) all newly-arriving detainees/inmates are isolated in quarantine for 14 days as a matter of course, regardless of whether they display any symptoms or exposure risk factors; (iii) asymptomatic detainees/inmates with exposure risk factors are quarantined; and (iv) symptomatic detainees/inmates with exposure risk factors are isolated until medically cleared consistent with current guidelines.

- *Onsite Medical Care*.  FCI Milan's Health Services department is currently accredited by the Accreditation Association for Ambulatory Healthcare (AAHC).

- *Visitation*. The facility has suspended in-person social visits and attorney visits for 30 days (starting on March 14, 2020), at which

---

[1] Information regarding the current precautionary measures at Milan was provided on March 27, 2020 by a Bureau of Prisons (BOP) attorney. More generally, the Bureau of Prison also maintains updated information regarding its COVID-19 Action Plan at its public website: https://www.bop.gov/coronavirus/.

point the suspension will be reevaluated. (Exceptions for in-person attorney visits may be made by the facility, at the request of a defense attorney; however, none have been approved to date.)

- *Sanitation.* Sanitation efforts have increased at the facility, with extra emphasis on high traffic areas. Inmates have always had, and continue to have, access to disinfectant for use in their cell. In addition, educational medical literature regarding hand-washing and other sanitation measures is displayed for detainees/inmates.

- *Correctional Officers and Staff.* All staff are currently screened daily at the facility, including having their temperature taken. Staff have been advised that they must self-report any symptoms.

- *Other.* Operations and programs for detainees/inmates have been modified in order to assist with social distancing efforts.

While there may ultimately be no measures that can absolutely guarantee that any person – whether inside or outside of jail – will not contract COVID-19, Milan has implemented heightened, reasonable precautions to mitigate the risk of COVID-19 spread, in the common interests of both prisoners and staff.

And even if there is possible exposure, according to the Centers for Disease Control and Prevention (CDC), most cases are considered mild.[2] Moreover, Wood has not disclosed any personal health issues or underlying chronic conditions, either to Pretrial Services or in his motion, which would place him within the CDC's recognized categories of individuals at higher risk of developing severe illness from COVID-19.[3]

Further, there is no showing of necessity under section 3142(i). There is no indication that if exposed Wood would be unable to obtain the necessary, appropriate treatment for a future illness while subject to a detention order. While COVID-19 is new, health claims by detainees are not.  Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where otherwise detention would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008). These cases recognize that reasonably necessary treatments are available in prison,

---

[2] *See, e.g.*, CDC, Situation Summary, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/summary.html (last visited March 17, 2020).

[3] *See, e.g.*, CDC, Are You at Higher Risk for Severe Illness?, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last visited March 17, 2020).

and often, a prison setting will provide superior care than a defendant could obtain on the outside. *United States v. Rodriguez*, 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999).

In sum, there is no current indication that Wood is in danger of compromising his health or physical safety. Any speculative concerns about possible future transmission should not be permitted to outweigh the careful balance of factors prescribed by Congress in determining whether a defendant is properly subject to pretrial detention. *See United States v. Johnson*, No. 19-CR-20437, Dkt. # 53 (E.D.M.I. Mar. 26, 2020) (Leitman, J.) (denying defendant's motion to revoke detention order, after analyzing statutory presumption and § 3142(g) factors, and noting "based upon the balance of factors described above, the Court is not persuaded that the COVID-19 pandemic justifies releasing [defendant] prior to trial"); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) (rejecting similar argument, and noting that "as concerning as the COVID-19 pandemic is," the court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act."). In light of the evidence in this case that no conditions will

reasonably assure the safety of the community, Wood's release from detention pending trial is not warranted.

Additionally, Wood is no differently situated with respect to COVID-19 than that of many other detainees who are currently in custody because of a judicial finding of danger to the community and lack of suitable conditions for release. Releasing large numbers of such defendants would endanger communities and place serious additional strain on the courts, Pretrial Services, and local law enforcement, while also exposing Pretrial Services officers to greater health risks while attempting to supervise these individuals in the community.

## IV.   The United States Requests a Hearing and Stay of any Order

The government requests a hearing in this matter. If the Court intends to order the defendant's release without a hearing, the government requests that the parties be notified sufficiently in advance for the government to determine whether it will seek an emergency stay pending a possible appeal to the Sixth Circuit.

## Conclusion

For these reasons, the Court should deny defendant's motion.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney


*s/Laura L. Moody*
Laura L. Moody (P51994)
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0206
Laura.moody@usdoj.gov

Dated: March 27, 2020

## **CERTIFICATE OF SERVICE**

I certify that on March 27, 2020, I electronically filed the foregoing

document with the Clerk of the Court for the Eastern District of

Michigan using the ECF system. I further certify that I have sent the

foregoing document to:

Mohammed A. Nasser
615 Griswold Suite 400
Detroit, MI 48226
mnasser@perkinslawgroup.net

*s/Laura L. Moody (P51994)*
Assistant United States Attorney
United States Attorney's Office
