

United States Department of Justice

United States Attorney
Eastern District of Michigan

*Matthew Schneider*
United States Attorney

211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9501
Matthew.Schneider3@usdoj.gov

March 26, 2020

**Via E-Mail**

The Honorable Denise Page Hood
Chief United States District Judge
Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 701
Detroit, MI 48226

  Re: Impact of COVID-19 on criminal cases within the Eastern District of Michigan

Dear Chief Judge Hood:

  I am writing to express my deep concern about the Court's process for reconsidering criminal detention decisions in light of the COVID-19 outbreak. I appreciate that the Court is taking this matter so seriously, and I know we will work cooperatively together during these challenging times. I also have no doubt about the Court's good intentions. However, I am writing because a large-scale release of some of our district's most dangerous criminal defendants poses a significant risk to public safety at a moment when we can all least afford it.

  My initial concern is that the Court could bypass the case-by-case decision-making that is essential to account for both a defendant's individualized circumstances and the danger that the defendant's release would pose to the public. I am concerned about the Court initiating its release efforts *sua sponte*, without consulting local, state, or federal law enforcement. One judge has even begun releasing defendants without first permitting the United States Attorney's Office to respond. Our adversarial system ensures that both the prosecution and defense have the opportunity to put forward their best arguments and evidence, and to challenge the arguments and evidence put forward by the other side. Departing from that adversarial system not only violates the law—including the rights of victims, *see* 18 U.S.C. § 3771(a)(2), (4)—but also diminishes the quality of the decision-making process.

  Our office continues investigating cases even after a defendant is charged and detained. We discover threats by defendants against cooperators and victims. We uncover additional evidence about the defendant's conduct. We learn of defendants' attempts to falsify or exaggerate evidence—including mitigating evidence such as their medical condition. We cannot provide those facts or perspective if we are not allowed to respond or develop the record, or if our input is

only sought after the Court has already decided to release a defendant.

I would also strongly urge the Court to pause and consider the risk that a mass release of criminal defendants would pose to public safety right now. Judicial and law enforcement resources are already under strain, and our district suffers from more violent crime than almost any other district in the nation. Every released defendant will require supervision and, in many cases, strict conditions of release. Yet, given the pandemic, they will receive no meaningful home visits, no treatment, and little or no monitoring. Plus, given their records, many of the released defendants are unlikely to refrain from committing additional crimes—even violent ones—burdening local, state, and federal law enforcement at a time when their resources are stretched thin and needed elsewhere. To take one example: at least *ten percent* of the Detroit Police Department's officers are currently under quarantine. The last thing they need right now, and the last thing other police departments need right now, is an influx of criminal defendants.

That is especially true because the defendants under consideration for release are some of the most dangerous defendants in our district. In many cases, magistrate and district judges have already made defendant-specific determinations, by clear and convincing evidence, that these defendants' release would threaten the public and that no condition or combination of conditions could reasonably assure community safety. This district already imposes a very high bar before detaining someone. Judges here detain only 41.5% of non-immigration pretrial defendants, compared to a national average of 61%, even though, again, this is one of the most dangerous districts in the country. This means that the defendants who are currently detained here are among the riskiest federal defendants in the nation. It would be a very poor decision to unleash them, en masse, on the community—particularly now.

I would also like to clear up some misconceptions about the conditions of confinement right now. The Federal Bureau of Prisons anticipated this pandemic and has been working since January to respond quickly and appropriately. Facilities in this district housing federal detainees are clean and uncrowded, and every facility has an emergency response plan to guide inmates and staff. BOP instituted a coronavirus-specific comprehensive operations plan that addresses everything from screening to inmate movement to increased telephone minutes due to the suspension of social visits. BOP's strict screening procedures and limited inmate movement reduce the risk that the virus will spread widely. And inmates at risk or suspected of contracting the virus have ready access to countermeasures: they will be tested, isolated, truly quarantined, and treated at the first sign of the illness. While prison facilities carry—and have always carried—a risk of spreading infectious diseases, BOP is well-versed in managing infectious diseases and prepared to handle COVID-19.

By contrast, criminal defendants who are released will exacerbate the public health risk in the community at large. They have proven themselves unwilling or unable to follow the law and, in many cases, to abide by court orders and comply with supervision. It is hard to imagine they will treat Governor Whitmer's social-distancing guidelines with any more respect. They are a risk to their pretrial services officers, and if they break the law, to law enforcement. And if they violate their release conditions or commit additional crimes, they will put both law enforcement and the Court in a very difficult position: either permit them to remain free and continue harming the public, or return them to custody and risk them bringing the virus back with them.

Again, I appreciate the Court taking our concerns seriously. We stand ready to work with you and all of our criminal justice partners on a tailored response to this pandemic that balances individualized health concerns with public safety and the integrity of our criminal justice system.

Sincerely,

Matthew Schneider
United States Attorney

cc:   Richard Helfrick, Federal Community Defender Office
      David Weaver, Court Administrator

3